UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| CALLEN WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-01742 KBJ |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff sought records relating to herself from the CIA.  She asserts that she is entitled to these records under the Freedom of Information Act ("FOIA") and the Privacy Act.  After she filed this case, the CIA answered her request: (a) by releasing to her the one responsive document that it found reflecting an open and acknowledged association between Plaintiff and the CIA and (b) by asserting the Glomar response, refusing to confirm or deny the existence or non-existence of records showing a classified connection to the Agency.  *See Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976) (explaining what is now known as the Glomar response).  The CIA's response to Plaintiff's request was proper, and summary judgment should be granted in its favor.

As grounds for this motion, Defendant asserts that there are no genuine issues of material fact in dispute and that it is entitled to judgment in its favor as a matter of law.  In support of this motion, Defendant is submitting herewith its statement of material facts not in genuine dispute, a memorandum of points and authorities with a supporting declaration, and a proposed order reflecting the requested relief.

Plaintiff should take notice that any factual assertions contained in the declaration and other attachments in support of Defendant's motion may be accepted by the Court as true unless Plaintiff submits her own declarations or other documentary evidence contradicting the assertions in Defendant's attachments. *See Neal v. Kelly*, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7.1(h) and Fed. R. Civ. P. 56(e).

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

BY:  /s/ *Fred E. Haynes*
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C.  20530
202.252.2550
fred.haynes@usdoj.gov

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| CALLEN WILLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-01742 KBJ |
| | ) |
| CENTRAL INTELLIGENCE | ) |
| AGENCY, | ) |
| | ) |
| Defendant. | ) |

_____)

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Defendant submits the following statement of material facts as to which

there is no genuine issue:

A.  Plaintiff's Freedom of Information Act Request.

1.  By a letter dated 11 July 2017, Plaintiff, Callen Willis, submitted a

FOIA/Privacy Act request to the CIA seeking records regarding four categories of

information pertaining to herself: (a) information specific to Plaintiff's

employment at Columbia University's Irving Cancer Research Center, where

Plaintiff was employed from 2014-2015; (b) information regarding Plaintiff's

MCAT exam that she took in Halifax, Nova Scotia, in January 2015; (c)

information about Plaintiff's hospitalization at Lennox Hill at the end of January

2015; and (d) "information pertaining to cases stated in [her] previous lawsuit"

3

against the CIA.[1]  Exhibit A hereto, declaration of Information Review Officer

Antoinette B. Shiner (the letter is attached as Exhibit A to the declaration), ¶ 8.

2.  On 14 September 2017, the CIA received a follow up letter from Plaintiff

updating her request to "specifically include . . . any and all information pertaining

to surveillance on myself, Callen Willis, should surveillance of any kind such as

video recordings, photographs, telephone recordings, etc. have occurred."  Plaintiff

also requested a "Vaugh [sic] Index."  *Id.* ¶ 9 (the letter is attached as Exhibit B to

the declaration).

B.  The CIA's Search For Records Showing An Unclassified Association With Plaintiff

3.  The CIA conducted a full search for any records that would reveal an

open or acknowledged relationship between Plaintiff and the CIA.  It first searched

for any previously publicly-released records on Plaintiff and found one responsive

document—-an online employment application she filed with the CIA in

November 2015 (this document was previously released in connection to

Plaintiff's prior litigation against the CIA).  *Id.* ¶ 10.

5.  Second, the Agency conducted searches in the Directorate of Support

(DS), the Directorate of Operations (DO), and the Director's Area (DIR) -- these

directorates and DIR possess records that show overt connections between a

---

[1] In 2017, Plaintiff voluntarily dismissed an earlier filed FOIA lawsuit against the CIA.  *See Willis v. CIA*, 16cv01092 (KBJ).

particular individual and the Agency, such as employment files, past FOIA requests, and outside communications with the Agency –- and therefore were determined to be the locations reasonably likely to maintain responsive records, if such records were to exist.  *Id.* ¶ 11.

6.   The searches were conducted using Plaintiff's name, Callen Willis, as well as her date of birth and social security number.  The DO and DIR directorates found no responsive documents.  The DS located the previously-mentioned online employment application submitted by Plaintiff to the Agency, which was held by the recruitment center.  *Id.* ¶ 12.

7.   The CIA sent Plaintiff this document with a response letter dated 21 February 2018, wherein the Agency also issued a Glomar[2] response in reference to any records that would reveal a classified connection to the CIA.[3]  Redactions were made to the document released to Plaintiff to protect CIA employee names and offices, as well as employees' classification blocks, per Exemption (b)(3), 5 U.S.C. § 552(b)(3) and the CIA Act, Section 6.  *Id.* ¶ 12 n. 6.

---

[2] The origins of the Glomar response date back to the D.C. Circuit's decision in Phillippi v. CIA, 546 F.2d 1009 (D.C. Cir. 1976), which affirmed the CIA's use of the "neither confirm nor deny" response to a FOIA request for records concerning the CIA's reported contacts with the media regarding Howard Hughes' ship the Hughes' Glomar Explorer.

[3] The 21 February 2018 letter responding to Plaintiff's request cited to Exemption 3 and Privacy Act Exemption (j)(1) but inadvertently failed to cite FOIA Exemption 1, which applies in this case and is discussed below.

8.  The CIA conducted thorough and diligent searches of relevant systems of records that were reasonably calculated to find any documents that reflect an open and acknowledged association between the subject of the request, Callen Willis, and the CIA.  *Id.* ¶ 13.

C.  The CIA's Glomar Response.

9.  FOIA exemption (b)(1), 5 U.S.C. § 552(b)(1), provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such  Executive order."  Here, Executive Order 13526 is the operative executive order that governs classification.[4]  *Id.* ¶ 14.

10.  Pursuant to a written delegation of authority under Executive Order 13256, Information Review Officer ("IRO") Shiner holds original classification authority at the TOP SECRET level.  Therefore, she is authorized to conduct classification reviews and to make original classification decisions.  Consistent with section 1.1(a) and 3.6(a) of E.O. 13256, IRO Shiner determined that the fact

---

[4] Section 1.1(a) sets forth the procedural standards for classification, which have been satisfied in this case.  Section 3.6(a) provides that "[a]n agency may refuse to confirm or deny the existence or nonexistence of requested records whenever the fact of their existence or nonexistence is itself classified under this order or its predecessors."

of the existence or nonexistence of the requested records showing a classified connection to the CIA is currently and properly classified.  *Id.* ¶ 15.

11.  IRO Shiner's determination that the existence or nonexistence of the requested records is classified was not made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security. *Id.* ¶ 16.

12.  The CIA refuses to confirm or deny maintaining records that would show a classified association with the CIA, relying on Exemptions (b)(1) and (b)(3), because disclosing that fact would tend to reveal "intelligence activities (including covert action), [or] intelligence sources or methods" within the meaning of section 1.4(c) of the Executive Order.  *Id.* ¶ 17.

13.  In the normal course, upon receiving a FOIA request, federal agencies conduct searches for responsive documents in their holdings and provide the requester with any non-exempt information contained in those records.  However, given the CIA's mandate to collect and analyze foreign intelligence and to conduct counterintelligence, there are many instances where the Agency cannot reveal whether or not it possesses responsive records -- particularly where responding to a

request would show the CIA's intelligence interest in, or clandestine connection to, a particular individual or activity.  *Id.* ¶ 18.

14.  A defining characteristic of the CIA's intelligence activities is that they are typically carried out through clandestine means, and therefore they must remain secret in order to be effective.  Responding to the substance of the request could jeopardize the clandestine nature of the Agency's intelligence activities or otherwise reveal previously undisclosed information about CIA sources, capabilities, authorities, interests, relationships with domestic or foreign entities, strengths, weaknesses, and/or resources.  *Id.*

15.  The CIA relies on the Glomar response to protect a number of important intelligence equities.  In cases where a request asks for records specific to an individual, the CIA has an interest in ensuring that no classified fact –- such as an individual's status as an asset or a subject of interest -- is revealed through the confirmation or denial of the existence of records.  *Id.* ¶ 19.

16.  The CIA depends upon human sources to collect intelligence, identify or provide access to others who may have intelligence information, and support CIA intelligence-gathering activities.  The CIA also targets certain individuals as part of its foreign intelligence collection efforts.  Revealing the identity of a confidential source or a target of collection could cause the exposure of CIA tradecraft, intelligence sources, methods, interests, and activities.  For example, in the case of

a person who has been cooperating with the CIA, official confirmation of that cooperation could cause the targets to take retaliatory action against that person or against his family or friends.  It also can place in jeopardy other individuals with whom the source has had contact.  *Id.*

17.  Consequently, confirming or denying the existence of records showing a classified connection to any particular individual, reasonably could be expected to cause serious damage to U.S. national security by indicating whether or not the CIA maintained any human intelligence sources related to an interest in the subject of the request.  *Id.*

18.  In order to maintain the credibility and effectiveness of the Glomar response, the CIA uses it consistently in all cases where the existence or nonexistence of records responsive to a FOIA request would disclose a classified fact, including instances in which the CIA does not possess records responsive to a particular individual or where the nonexistence of records is seemingly of little consequence.  *Id.* ¶ 20.

19.  If the CIA were to invoke a Glomar response only in instances when responsive records about a person exist, the Glomar response would be tantamount to a confirmation that an individual maintains some classified connection to the Agency.  Such a practice would reveal the very information that the CIA endeavors to protect in the interest of national security.  Accordingly, the response to

Plaintiff's request in this case is consistent with the CIA's standard practice – a practice that is necessary to ensure the adequate protection of intelligence sources, methods, and activities. *Id.*

20. The CIA asserted a Glomar response to Plaintiff's request because the existence or nonexistence of records showing a classified association with the CIA is currently and properly a classified fact, the disclosure of which reasonably could be expected to cause damage to the national security. *Id.*

21. FOIA exemption (b)(3) provides that FOIA does not apply to matters that are:

> Specifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. . .

5 U.S.C. § 552(b)(3). *Id.* ¶ 21.

22. Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1) (the "National Security Act"), provides that the Director of National Intelligence ("DNI"), "shall protect intelligence sources and methods from unauthorized disclosure." Accordingly, the National Security Act constitutes a federal statute which, "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. §552(b)(3). *Id.* ¶ 22.

23.   Under the direction of the DNI pursuant to section 102A, and consistent with section 1.6(d) of Executive Order 12333, the CIA is authorized to protect intelligence sources and methods from unauthorized disclosure.  Acknowledging the existence or nonexistence of records reflecting a classified connection to the CIA in this matter would reveal information that concerns intelligence sources and methods, which the National Security Act is designed to protect.  *Id.* ¶ 22.

24.   Consequently, the fact of the existence or nonexistence of records that would reflect a classified connection to the CIA is exempt from disclosure under FOIA exemption (b)(3) pursuant to the National Security Act.  In contrast to Exemption (b)(1), this statute does not require the CIA to identify and describe the damage to the national security that reasonably could be expected to result should the CIA confirm or deny the existence or nonexistence of the records.  *Id.* ¶ 23.

25.   FOIA exemptions (b)(1) and (b)(3) thus apply independently and co-extensively to the aspect of plaintiff's request that would show a classified association with the CIA.  ¶ 23.

26.   Privacy Act exemption (j)(1) authorizes the Director of the CIA ("DCIA") to exempt, via published regulation, any CIA system of records from the access provisions of subsection (d) of the Privacy Act.  *See* 5 U.S.C. § 552a(j)(1).  *Id.* ¶ 24.

27.   The mere fact of the existence or nonexistence of records revealing a classified connection between the CIA and Plaintiff implicates intelligence sources and methods.  This information is thus exempt from disclosure under Privacy Act exemption (j)(1).  *Id.* ¶ 25.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN , D.C. Bar #924092
Chief, Civil Division

BY  /s/ Fred E. Haynes
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C. 20530
202.252.2550
fred.haynes@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CALLEN WILLIS,                      )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )    Civil Action No. 17-01742 KBJ
                                    )
CENTRAL INTELLIGENCE                )
AGENCY,                             )
                                    )
        Defendant.                  )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff submitted a Freedom of Information Act/Privacy Act request to the CIA seeking records that related to herself.  The CIA searched its records to determine whether there were any records revealing an open or acknowledged relationship between Plaintiff and the CIA.  It found one such document, which it released to Plaintiff with appropriate redactions under the CIA Act.  As to this aspect of the case, there are two issues: was an adequate search conducted and were the minimal redactions to the document appropriate.  The additional issue presented by this case is whether it was appropriate for the CIA to respond to Plaintiff by asserting the Glomar response as to any classified connection Plaintiff may have with the Agency.  As we explain, the CIA's actions were proper under the FOIA and Privacy Act, and summary judgment should be granted in its favor.

## I.  Statement Of Facts

Defendant incorporates here the preceding Statement of Material Facts As To Which There Is No Genuine Issue.

## II.  Legal Standard

"FOIA mandates broad disclosure of government records to the public, subject to nine enumerated exemptions." *Wolf v. CIA,* 473 F.3d 370, 374 (D.C.Cir. 2007) (citation omitted).  Exemption (b)(1) protects matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and ... in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption (b)(3) covers matters "specifically exempted from disclosure by statute," provided that such statute leaves no discretion on disclosure or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.,* § 552(b)(3). These exemptions cover not only the content of protected government records but also the fact of their existence or nonexistence, if that fact itself properly falls within the exemption.  *Wolf*, 473 F.3d at 374.  Agency refusal to confirm or deny the existence or nonexistence of records responsive to a request is known as a Glomar response.  *Id.* (citing *Phillippi v. CIA,* 546 F.2d 1009, 1011 (D.C. Cir.1976)), which concerned the existence of records regarding a ship named

the Hughes Glomar Explorer).  (This summarization of the law is taken from *Larson v. Department of State*, 565 F.3d 857, 861 (D.C. Cir.2009).)

The federal agency defendant in a FOIA and Privacy Act case is entitled to summary judgment if it can demonstrate that there exists no genuine issue of material fact with regard to the agency's compliance with the statutes, *Steinberg v. United States Department of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994), with the facts viewed in the light most favorable to the requester, *Weisberg v. Department of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984).  An agency that has withheld information or refused to confirm or deny that it possesses such information can carry its burden on summary judgment by affidavit or declaration.  *See Larson*, 565 F.3d at 862.  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Wolf*, 473 F.3d at 374-75.

## III.  <u>Argument</u>

### A.  <u>The CIA's Search And Response As To Its Unclassified Records Was Proper</u>

The CIA conducted a search for any unclassified records that would reveal an open or acknowledged relationship between Plaintiff and the CIA.  First, it searched for any previously publicly-released records on Plaintiff and found one responsive document—-an online employment application she filed with the CIA in November 2015 (this document was previously released in connection with Plaintiff's prior litigation against the CIA).  Exhibit A hereto, the Shiner

declaration, ¶ 11.  Second, the CIA conducted searches in two of its directorates and the Director's Area, because these were the CIA components that were reasonably likely to possess records showing overt connections between the CIA and a particular person.  *Id.*

The first step in evaluating an agency's response to a FOIA request is to determine whether an adequate search was conducted for responsive records.  The adequacy of an agency's search is judged by a standard of "reasonableness."  *See McGehee v. CIA*, 697 F.2d 1095, 1100 (D.C. Cir. 1983); *Elliott v. Department of Agriculture*, 596 F.3d 842, 851 (D.C. Cir. 2010).  The search must be "reasonably calculated to uncover all relevant documents."  *Weisberg v. Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

Because the search need only be reasonable rather than exhaustive, this standard does not place upon the agency a requirement that it prove that all responsive documents have been located.  *See Harrison v. Federal Bureau of Prisons*, 681 F.Supp.2d 681, 81 (D.D.C. 2010); *Miller v. Department of State*, 779 F.2d 1378, 1383 (8th Cir. 1986); and *Campaign for Responsible Transplantation v. FDA*, 219 F. Supp. 2d 106, 110-11 (D.D.C. 2002).

An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *See Oglesby v. Department of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990);

*Kowalczyk v. Department of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996).

Moreover, there is no requirement that the search be perfect.  *See Meeropol v.*

*Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

It is the agency's burden to establish that it has "made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably

expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  "An

agency may prove the reasonableness of its search through affidavits of responsible

agency officials so long as the affidavits are relatively detailed, nonconclusory and

submitted in good faith."  *Miller*, 779 F.2d at 1383; *see also Schoenman v. FBI,*

763 F. Supp. 2d 173, 188 (D.D.C. 2011).

Once the agency has met its burden, then the burden shifts to the requester to

rebut the evidence by contradicting the defendant's account of the search procedure

or by showing bad faith on the part of the agency.  *See Steinberg v. Department of*

*Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  It is insufficient, however, for a

requester to attempt to rebut agency affidavits with "purely speculative claims."

*SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

Here, the Shiner declaration establishes that the CIA conducted an adequate

search for records showing an open or acknowledged relationship between Plaintiff

and the CIA: it searched the records systems where, if such records existed, it was

reasonable likely to find them, Exhibit A, Shiner declaration, ¶ 11, and it used

search terms reasonably likely to locate such records if they existed (the searches were conducted using Plaintiff's name, Callen Willis, as well as her date of birth and social security number), *Id.*, ¶ 12.

The one record located by this search, plaintiff's online employment application, was released to her with minimal redactions.  The redactions were of CIA employee names and employee classification blocks.[5]  These redactions were made pursuant to FOIA Exemption (b)(3), 5 U.S.C. § 552(b)(3), relying on Section 6 of the CIA Act, 50 U.S.C. § 403g, which provides that the CIA shall be exempted from "the provisions of any other law" (in this case, FOIA and Privacy Act) "which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." These limited redactions were proper.

## B.  The CIA Properly Invoked The Glomar Response As To Its Classified Records.

The FOIA represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). Thus, while the FOIA generally requires agency disclosure, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which

---

[5] Plaintiff's social security number was also redacted for her protection.

disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see* 5 U.S.C. § 552(b).  These exemptions "cover not only the content of protected government records but also the fact of their existence or nonexistence, if that fact itself properly falls within the exemption." *Larson*, 565 F.3d at 861.

As this Circuit held in *EPIC v. National Security Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012), "an agency may . . . refuse to confirm or deny the existence or nonexistence of response records [to a FOIA request] if the particular FOIA exemption at issue would itself preclude the acknowledgment of such documents." *Id.; Roth v. United States Department of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011); *Wolf*, 473 F.3d at 374.  The "Glomar response" takes its name "from the Hughes Glomar Explorer, a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor." *Bassiouni v. CIA*, 392 F.3d 244, 246 (7th Cir. 2004).

When a Glomar response is invoked, the Court must decide whether the agency's declaration provides "sufficiently detailed and persuasive reasons for taking the position that it will neither confirm nor deny the existence or non-existence of any responsive records." *Wheeler v. CIA*, 271 F.Supp.2d 132, 141 (D.D.C. 2003).  Such a declaration "enjoy[s] a presumption of good faith, which

may not be rebutted by purely speculative claims." *Mack v. Department of Navy*,

259 F. Supp.2d. 99, 105 (D.D.C. 2003) (internal quotations omitted).

i. Exemption (b)(1)

Exemption (b)(1) of the FOIA, 5 U.S.C. § 552(b)(1), provides that the FOIA

does not require the production of records that are: "(A) specifically authorized

under criteria established by an Executive order to be kept secret in the interest of

national defense or foreign policy and (B) are in fact properly classified pursuant to

such  Executive order."  The Executive order on classification that controls this

case is Executive Order 13526, which provides that information shall be

considered for classification if it falls within one (or more) of eight specifically

enumerated categories of information.  Under Section 3.6(a) of the Order, "[a]n

agency may refuse to confirm or deny the existence or nonexistence of requested

records whenever the fact of their existence or nonexistence is itself classified

under this order or its predecessors."  The categories of classified information at

issue here are those found in Section 1.4(c), which includes intelligence activities

and intelligence sources and methods.

Information Review Officer Shiner, an original classification authority, has

concluded that confirming the existence or nonexistence of records that would

reveal a classified connection to the CIA reasonably could be expected to result in

damage to national security.  Exhibit A, Shiner declaration, at ¶ 20.  She explains

that in order to maintain the credibility and effectiveness of the Glomar response, the CIA uses it consistently in all cases where the existence or nonexistence of records responsive to a FOIA request would disclose a classified fact, including instances in which the CIA does not possess records responsive to a particular individual or where the nonexistence of records is seemingly of little consequence. *Id.*

As she further explains, if the CIA were to invoke a Glomar response only in instances where responsive records about a person exist, the Glomar response would be tantamount to a confirmation that an individual maintains some classified connection to the CIA.  Such a practice would reveal the very information that the CIA endeavors to protect in the interest of national security.  Accordingly, the response to Plaintiff's request in this case is consistent with the CIA's standard practice – a practice that is necessary to ensure the adequate protection of intelligence sources, methods, and activities.  *Id.*

The Shiner declaration amply demonstrates that a Glomar response was appropriate in this case to prevent disclosure of classified information concerning intelligence activities, sources, and methods.  This Court should defer to Ms. Shiner's assessment of the likely repercussions to the national security from disclosure of the information requested by plaintiff.  *See, e.g., Center for National Security Studies v. Department of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003)

(under FOIA "we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."); *Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information.").

ii. Exemption (b)(3)

Pursuant to Exemption (b)(3), 5 U.S.C. § 552(b)(3), information may be withheld in response to a FOIA request if the information is "specifically exempted from disclosure by statute . . . [provided that such statute] (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption (b)(3) was promulgated in recognition of other, agency-specific statutes limiting the disclosure of information held by an agency, and it incorporates those statutes within the exemptions to FOIA. *See Balridge v. Shapiro*, 455 U.S. 345, 352-353 (1982); *Essential Information, Inc. v. U.S. Information Agency*, 134 F.3d 1165, 1166 (D.C. Cir. 1998).

Under Exemption (b)(3), judicial review is limited to: (1) whether the withholding statute qualifies as an Exemption (b)(3) statute, and (2) whether the withheld material satisfies the criteria of the exemption statute. *See CIA v. Sims,*

471 U.S. 159, 167 (1985); *Fitzgibbon v. CIA,* 911 F.2d 755, 761 (D.C. Cir. 1990).

Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. §

403-1(i)(1) (the "National Security Act"), provides that the Director of National

Intelligence ("DNI") "shall protect intelligence sources and methods from

unauthorized disclosure."  The National Security Act qualifies as an Exemption 3

statute.  *CIA v. Sims,* 471 U.S. at 180; *American Civil Liberties Union v.*

*Department of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011).

Under the direction of the DNI pursuant to section 102A, the CIA is

authorized to protect CIA sources and methods from unauthorized disclosure.

Exhibit A, Shiner Declaration, ¶ 29.  Acknowledging the existence or nonexistence

of records reflecting a classified connection of an individual to the CIA would

reveal information that concerns intelligence sources and methods, which the

National Security Act is designed to protect.  *Id.*

Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g

(the "CIA Act"), which provides that the CIA shall be exempted from the

provisions of "any other law" (in this case, FOIA and Privacy Act) which requires

the publication or disclosure of, inter alia, the "functions" of the CIA, also supports

the use of the Glomar response in this case.  Pursuant to this statute, the CIA is

exempt from disclosing information relating to its core functions, including

clandestine intelligence activities.  The CIA Act qualifies as an Exemption 3

statute.  CIA v. Sims, 471 U.S. at 180.  Section 6 exempts the CIA from disclosing "the organization, functions, names, official titles, salaries, or numbers of persons employed by the Agency."  50 U.S.C. § 403g.  This language authorizes the CIA to refuse to confirm or deny the existence or nonexistence of an employment relationship between it and an individual.  *Minier v. CIA*, 88 F.3d 796, 801 (9th Cir. 1996).

Accordingly, the fact of the existence or nonexistence of records that would reflect whether or not there was a classified connection between Plaintiff and the CIA is exempt from disclosure under FOIA Exemption (b)(3) pursuant to both the National Security Act and the CIA Act.  Therefore, the CIA properly refused to confirm or deny whether it had records that would reveal a classified connection to the Agency.

C.  The Glomar Response Was Appropriate Under The Privacy Act

Information that has been properly classified under the applicable Executive Order is exempt from the Privacy Act under Exemption (k)(1), 5 U.S.C. § 552a(k)(1), which allows the head of an agency to promulgate rules to prevent the disclosure of any system of records that is subject to 5 U.S.C. § 552(b)(1). The CIA has promulgated 32 C.F.R. § 1901.63(a) to exempt classified information from the Privacy Act.  The Privacy Act, 5 U.S.C. § 552a(j)(1) also authorizes the exemption of a system of records from the Privacy Act if that system is maintained

by the CIA.  The CIA has implemented this exemption by promulgating 32 C.F.R.

§ 1901.62(d)(1), which exempts information that would "[c]onsist of, pertain to, or

otherwise reveal intelligence sources and methods[.]"  It follows that the CIA's

Glomar response was proper under the Privacy Act.

## IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment

should be granted.

Respectfully submitted,

JESSIE K. LIU, D.C. Bar #472845
United States Attorney

DANIEL F. VAN HORN , D.C. Bar #924092
Chief, Civil Division

BY  /s/ Fred E. Haynes
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 Fourth Street, N.W., Room E-4110
Washington, D.C. 20530
202.252.2550
fred.haynes@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| CALLEN WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-01742 KBJ |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

## ORDER

Upon consideration of defendant's summary judgment motion and the response thereto, it is this _____ day of _____, 2018,

ORDERED that the motion is granted; and it is further

ORDERED that this case is dismissed with prejudice.  This is a final, appealable order.

UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of March, 2018, I caused a copy of the

foregoing motion for summary judgment to be served on plaintiff by email and by

first-class mail, postage prepaid, addressed to:

> Ms. Callen Willis
> 4317 Hyatt Court
> Fort Worth, Texas 76116

> BY:  /s/ *Fred E. Haynes*
> Fred E. Haynes, D.C. Bar # 165654
> Assistant United States Attorney
> 555 4th Street, N.W., Room E-4110
> Washington, D.C. 20530
> (202) 252.2550
> fred.haynes@usdoj.gov